UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| **JOSHUA DONALD TARTER,** | **CIVIL ACTION NO. 5:20-240-KKC** |
| **Plaintiff,** | |
| v. | **ORDER AND OPINION** |
| **NAVIGATORS INSURANCE COMPANY,** | |
| **Defendant.** | |

*** *** ***

Plaintiff Joshua Donald Tarter moves for a preliminary injunction (DE 4) and for an order for a preliminary injunction (DE 25). Defendant Navigators Insurance Company moves to dismiss Plaintiff's complaint for failure to state a claim (DE 14) and to strike Plaintiff's motion for an order for a preliminary injunction (DE 26). For the following reasons, the Court grants Defendant's motion to dismiss and denies all other motions as moot.

I. Background

On June 3, 2020, Plaintiff Joshua Donald Tarter filed a complaint for breach of contract and sought declaratory relief based on Defendant Navigators Insurance Company's denial of coverage for claims brought against Plaintiff in another pending action.[1] Effective April 1, 2017, Tarter Gate Company, LLC ("Tarter Gate") purchased a directors and officers ("D & O") liability policy (the "Policy") from Defendant under Target Gate's assumed name of "Tarter Farm & Ranch Equipment." (DE 1-1 at 3; DE 4-1 at 2; DE 14-1 at 5.) The Policy

---

[1] The underlying action is *C-Ville Fabricating, Inc. v. Tarter*, No. 5:18-cv-379 (E.D. Ky.). For purposes of this order and opinion, "C-Ville Compl." refers to the complaint in that action.

1

provides coverage for "all **Loss** which the **Insured Persons** are legally obligated to pay as a result of a **Claim** first made against the **Insured Persons** during the **Policy Period** or the Discovery Period, if purchased, for a **Wrongful Act** by the **Insured Persons**." (DE 1-1, Directors and Officers Liability Coverage Part, Section I.A (emphasis in original).) "**Insured Persons**" include "any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company**" and "any **Employee**." (DE 1-1, Directors and Officers Liability Coverage Part, Section II.E, Endorsement 24 (emphasis in original).) Under the Policy, Defendant also assumes the "duty to defend any **Claim** against any **Insured** covered under [the] Policy, even if the allegations in such **Claim** are groundless, false or fraudulent." (DE 1-1, General Terms and Conditions, Section I.A (emphasis in original).) During the relevant policy period, Plaintiff was a member and manager of Tarter Gate and acted as Tarter Gate's President. (C-Ville Compl. ¶¶ 74, 182.)

In the underlying action, C-Ville Fabricating, Inc. d/b/a Tarter Industries ("Tarter Industries"), Anna Lou Tarter Smith ("Anna Lou"), LuAnn Tarter Coffey ("LuAnn"), and Douglas Tarter ("Doug") brought individual claims against Plaintiff and his alleged co-conspirators, Thomas Gregory ("Gregory") and Hong Kong QMC Industry Company, Ltd ("QMC"). (C-Ville Compl. at pp. 1-2.) Anna Lou, LuAnn, and Doug also filed derivative claims against Plaintiff, Gregory, and QMC on behalf of Tarter Industries, Tarter Management Company, Inc. ("Tarter Management"), Tarter Gate, and Tarter Tube, LLC ("Tarter Tube") (collectively, the "Tarter Companies"). (C-Ville Compl. ¶¶ 8-10.)

The Tarter Companies are comprised of separate legal entities that operate under common ownership and control. (C-Ville Compl. ¶¶ 19-20.) Together, the Tarter Companies exist as a family-owned animal management and farm gate manufacturing operation. *C-*

*Ville Fabricating, Inc. v. Tarter*, No. 5:18-CV-379-KKC, 2019 WL 1368621, at *1 (E.D. Ky. Mar. 26, 2019). Anna Lou, LuAnn, and Doug are shareholders of Tarter Industries, Tarter Management, Tarter Gate, and Tarter Tube. (C-Ville Compl. ¶¶ 8-10, 72, 81.) Anna Lou owns the single largest stake in the Tarter Companies. (C-Ville Compl. ¶ 83.) Anna Lou is also a director of Tarter Industries and Tarter Management and serves as Tarter Gate's Secretary/Treasurer. (C-Ville Compl. ¶¶ 8,74.)

Leading up to the filing of the underlying action, Anna Lou issued a notice of a special meeting to demand that Tarter Industries commence legal action against Plaintiff and his co-defendants. (C-Ville Compl. ¶ 109.) In her capacity as Tarter Management's President, Anna Lou requested that the Treasurer-Secretary issue a similar notice for Tarter Management, but the Treasurer-Secretary did not comply. (C-Ville Compl. ¶¶ 134, 146.) Anna Lou, LuAnn, and Doug also requested a special meeting for Tarter Gate and Tarter Tube to commence legal action against Plaintiff, Gregory, and QMC. (DE ¶ 153.)

The plaintiffs in the underlying action claim that Plaintiff exploited his position as a manager and senior executive at the Tarter Companies to orchestrate a conspiracy with his co-defendants to siphon off profits from the Tarter Companies. (C-Ville Compl. ¶¶1-2, 184.) Plaintiff and his co-defendants allegedly overcharged the Tarter Companies for products supplied to them, fraudulently obtained compensation, embezzled trade secrets, and created pass-through entities to avoid detection. (C-Ville Compl. ¶¶ 2, 215, 223.)

In 2017, Anna Lou, LuAnn, and Doug filed an initial lawsuit against Plaintiff, Gregory, and QMC, alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Defend Trade Secrets Act ("DTSA"), Kentucky's Uniform Trade Secrets Act ("KUTSA"), and Kentucky common law. *C-Ville Fabricating, Inc.* 2019 WL 1368621, at *5. This action was dismissed without prejudice because the plaintiffs failed to establish individual and derivative standing. *Id.* Those same plaintiffs then filed the

underlying action, similarly alleging violations of RICO, the DTSA, the KUTSA, and Kentucky common law. (C-Ville Compl. at ¶¶ 342-472.) After Plaintiff and Gregory moved to dismiss the underlying action, the Court found that Anna Lou, LuAnn, and Doug lacked standing to sue Plaintiff and Gregory in their individual capacities. *C-Ville Fabricating, Inc.*, 2019 WL 1368621, at *6. However, the Court also concluded that Tarter Industries had direct standing to sue the defendants and that Anna Lou, LuAnn, and Doug had derivative standing to sue on behalf of Tarter Management, Tarter Gate, and Tarter Tube. *Id.*

During the pendency of the initial 2017 action, Plaintiff notified Defendant of the lawsuit, but Defendant declined to defend Plaintiff under the Policy, due to the Policy's Insured versus Insured ("IvI") Exclusion and Specific Persons Exclusion. (DE 1 ¶ 14; DE 1-2 at 2-3.) Plaintiff notified Defendant of the underlying action, again seeking coverage and a defense. (DE 1 ¶ 18.) Again, Defendant denied the coverage for similar reasons. (DE 1 ¶ 18; DE 1-4 at 2-7.) Thereafter, Plaintiff filed his breach of contract action against Defendant (DE 1 ¶ 1) and sought a declaration that Defendant is "obligated to defend and indemnify" Plaintiff (DE 1 ¶ 22). Defendant now moves to dismiss Plaintiff's complaint for failure to state a claim under Civil Rule of Procedure 12(b)(6). (DE 14.) Plaintiff seeks a preliminary injunction requiring Defendant to defend and indemnify Plaintiff. (DE 4 at 2.)

## II.   Motion to Dismiss

### 1.   Legal Standard

To survive a 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion dismiss, courts generally cannot consider matters outside of the

4

pleadings. *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011). But "a court may consider exhibits attached [to the complaint], public records, [and] items appearing in the record of the case . . . so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Id.* at 680-81 (citation and quotation marks omitted).

For purposes of this motion to dismiss, the record of the case in the underlying action is considered a public record, and Plaintiff attached the Policy as an exhibit to the complaint. (*See* DE 1-1). The Court may accordingly consider both, as Plaintiff referred to both in his Complaint, and both are central to his breach of contract and declaratory relief claims.

### 2. Breach of Contract Claim

"To prove a breach of contract, the complainant must establish three things: 1) existence of a contract; 2) breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson Cty. Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. Ct. App. 2009). An insurer breaches an insurance contract if the insurer has a duty to defend the insured but fails to provide a defense. *See Aetna Cas. & Sur. Co. v. Kentucky*, 179 S.W.3d 830, 841 (Ky. 2005), *as modified on reh'g* (Jan. 19, 2006). An insurer has a duty to defend the insured when "there is any allegation which potentially, possibly or might come within the coverage terms of the insurance policy." *Id.*

"Interpretation and construction of an insurance contract is a matter of law for the court." *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 871 (Ky. 2002). In interpreting an insurance contract, "(1) the contract should be liberally construed[,] and all doubts resolved in favor of the insureds; and, (2) exceptions and exclusions should be strictly construed to make insurance effective." *Ky. Farm Bureau Mut. Ins. Co. v. McKinney*, 831 S.W.2d 164, 166 (Ky. 1992). If a provision in an insurance contract is "clear and

5

unambiguous," courts must enforce the policy "as written." *Kemper*, 82 S.W.3d 869 at 873. When such provision is ambiguous, the Court must resolve the ambiguity "in favor of the insured's reasonable expectations." *True v. Raines*, 99 S.W.3d 439, 443 (Ky. 2003), *as amended* (Apr. 2, 2003). "However, the mere fact that a party attempts to muddy the water and create some question of interpretation does not necessarily create an ambiguity[.]" *Id.* (citation, quotation marks, and brackets omitted).

Parties do not dispute that the Policy exists as a contract between Tarter Gate and Defendant; rather, they dispute whether Plaintiff has sufficiently stated that Defendant breached that contract by declining to defend Plaintiff in the underlying action. Defendant argues that it has no duty to defend Plaintiff because of the Policy's Specific Persons Exclusion, the Policy's Insured versus Insured ("IvI") Exclusion, and Tarter Gate's alleged misrepresentation in the application process. (DE 14-1 at 3-5.) Defendant also contends that certain claims within the underlying action do not trigger coverage in the first instance, and the fortuity doctrine further bars coverage. (DE 14-1 at 4, 23.)

The Court finds that Defendant has no duty to defend Plaintiff, based on the Policy's Specific Persons and IvI Exclusions, and consequently, Plaintiff has failed to state a breach of contract claim. The Court address both of these provisions in turn.

### A.  Specific Persons Exclusion

The Policy's Specific Persons Exclusion provides:

> The Insurer will not be liable under this Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured** that part of any **Claim** which is brought or maintained by or on behalf of any of the following individuals, including his/her estate, any beneficiary of his/her estate, or assignee, trustee, or receiver thereof: Neil Duggins[,] LuAnn Tarter Coffey[,] and Doug Tarter.

(DE 1-1, Directors and Officers Liability Coverage Part, Section III, Endorsement No. 5 (emphasis in original).) A "**Claim**" is a "civil . . . proceeding brought against any **Insured**

6

seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading[.]" (DE 1-1, General Terms and Conditions, Section II.A.3 (emphasis in original).) Any "**Insured**" is any "**Insured Person[]**." (DE 1-1, Directors and Officers Liability Coverage Part, Section II.A.D (emphasis in original).) Any "**Insured Person[]**" includes "any **Employee**." (DE 1-1, Directors and Officers Liability Coverage Part, Section II.E.4, Endorsement 24 (emphasis in original).) An "**Employee**" is "any individual whom the **Company** compensates by wages, salary, and/or commissions and whose labor or service is directed by the **Company**, whether such individual performs such labor or service on a full-time, part-time, seasonal or temporary basis." (DE 1-1, Directors and Officers Liability Coverage Part, Section II.C.1 (emphasis in original).)

For purposes of the Policy, the underlying action—in its entirety—constitutes a Claim because it is a civil proceeding seeking both monetary and non-monetary relief through a complaint against Plaintiff. (*See generally* C-Ville Compl.) Parties agree that under the Policy, Plaintiff constitutes an "Insured" because he was an "Insured Person" via his role as a manager for the Company, Tarter Gate. (DE 14-1 at 16.) Therefore, Plaintiff was an "Employee" during the relevant policy period.[2]

Defendant argues that the Specific Persons Exclusion bars coverage of the claims that LuAnn and Doug have asserted in the underlying action. (DE 14-1 at 18-19.) Plaintiff maintains that the Court should not give legal effect to this exclusion because "it is ambiguous to the point of incoherence." (DE 18 at 14.) The Court agrees with Defendant.

The Specific Persons Exclusion is unambiguous; as written, the exclusion clearly precludes coverage for those parts of the underlying action brought by LuAnn or Doug. Here, those parts include the derivative claims that LuAnn and Doug brought on behalf of Tarter

---

[2] Plaintiff is also apparently an Insured Person since he was an officer for Tarter Gate, serving as its President. (C-Ville Compl. ¶ 74.)

Management, Tarter Gate, and Tarter Tube. Plaintiff does not attempt to articulate why this provision is ambiguous or offer any alternative interpretations for the provision's meaning. Instead, Plaintiff offers a conclusory argument that is insufficient to allow the Court to stray from the provision's plain meaning.

Thus, the Court finds that Defendant does not have a duty to defend Plaintiff in the underlying action for the derivative claims that LuAnn and Doug brought on behalf of Tarter Management, Tarter Gate, and Tarter Tube. The Court must now evaluate whether Defendant has a duty to the defend Plaintiff for the remainder of the underlying action— Tarter Industries' direct claim and those derivative claims Anna Lou brought on behalf of Tarter Management, Tarter Gate, and Tarter Tube.

### B. Insured versus Insured Exclusion

The Policy's IvI Exclusion states:

> The **Insurer** will not be liable under this Coverage Part to make any payment of **Loss**, including **Costs of Defense**, in connection with any **Claim** made against any **Insured** by or on behalf of any **Insured** or any security holder of the **Company**; provided, however, that this exclusion shall not apply to any **Claim** brought by any security holder of the **Company**, whether directly or derivatively, if the security holder bringing such **Claim** is acting totally independently of, and without the solicitation, assistance, active participation or intervention of, the **Company** or any **Insured Person**.

(DE 1-1, Directors and Officers Liability Coverage Part, Section III.A.8.b (emphasis in original).) As defined *supra*, a "**Claim**" is a "civil . . . proceeding brought against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading[.]" (DE 1-1, General Terms and Conditions, Section II.A.3 (emphasis in original.) An "**Insured**" is the "**Company**" and "all **Insured Persons**." (DE 1-1, Directors and Officers Liability Coverage Part, Section II.D (emphasis in original).) The "**Company**"

8

is Tarter Gate[3]. (DE 1-1, General Terms and Conditions, Section II.B-C.) "**Insured Persons**" include "any past, present or future duly elected or appointed director, officer or member of the board of managers or management committee of the **Company**." (DE 1-1, Directors and Officers Liability Coverage Part, Section II.E, Endorsement 24 (emphasis in original).)

Here, as previously discussed, the Claim consists of the underlying action *in its entirety* because the Policy defines a "Claim" as the entire "civil proceeding." Again, parties both agree that Plaintiff is an Insured. Anna Lou is an Insured Person since she is Tarter Gate's Secretary/Treasurer and therefore, an officer for the Company.[4] Thus, based on the IvI Exclusion's language as written, Defendant does not have a duty to defend Plaintiff for any part of the underlying action, as the underlying action is a Claim made against Plaintiff, an Insured, by Anna Lou, another Insured.

Alternatively, coverage is also precluded under the IvI Exclusion because the underlying action is a Claim brought against Plaintiff, an Insured, by Anna Lou, LuAnn, and Doug, who are all Tarter Gate shareholders and accordingly, Tarter Gate security holders. The IvI Exclusion's assistance exception that allows coverage for a Claim if the security holder is "acting totally independently of, and without the solicitation, assistance, active participation or intervention of . . . any Insured Person" does not apply; Anna Lou, an Insured Person, has actively participated in bringing the Claim. Anna Lou was a plaintiff in the initial 2017 action, she is a plaintiff in the current action, she issued a notice of a special

---

[3] The Policy was technically purchased under Target Gate's assumed name of "Tarter Farm & Ranch Equipment." (DE 4-1 at 2; DE 14-1 at 5.) The Court thus treats the Policy as only applying to Tarter Gate and not any other entity comprising the Tarter Companies.

[4] Parties seem to erroneously conclude that Anna Lou is an Insured Person because she acts as a Director for Tarter Gate. (DE 14-1 at 16; DE 18 at 11.) According to filings in the underlying action, Anna Lou is instead a Director for Tarter Industries and Tarter Management. *C-Ville Fabricating, Inc.*, 2019 WL 1368621, at *2, *8. However, this factual misstatement does not impact the Court's ultimate conclusion that the IvI Exclusion precludes any coverage for Plaintiff.

meeting demanding that Tarter Industries commence legal action against Plaintiff, she requested that the Treasurer-Secretary issue a similar notice for Tarter Management, and she requested a special meeting for Tarter Gate and Tarter Tube to commence legal action against Plaintiff. As a result, Defendant does not have a duty to defend Plaintiff in the underlying action since Tarter Gate security holders brought the lawsuit with the active participation of an Insured Person, Anna Lou, against Plaintiff, an Insured.

The Court reiterates that the Policy clearly and unambiguously defines a "Claim" differently than its traditional legal connotation. The Policy defines the term as a "civil proceeding" as a whole, rather than defining a "Claim" as an individual component of a lawsuit that forms part of the larger action. By virtue of the presence of Insureds (and security holders) on both sides of the underlying action, Defendant has no duty to defend Plaintiff for any part of the lawsuit under the Policy as written. This includes those claims that the Specific Persons Exclusion do not preclude—namely, Tarter Industries' direct claim and Anna Lou's derivative claims brought on behalf of Tarter Management, Tarter Gate, and Tarter Tube.

Plaintiff disagrees, specifically asserting that the IvI Exclusion does not preclude coverage of Tarter Industries' claim against him because Tarter Industries is not an Insured under the Policy nor a security holder for Tarter Gate. (DE 18 at 10-13). To support his argument, Plaintiff references the Policy's allocation clause, which states in relevant part, "If a **Claim** made against any **Insured** includes both covered and uncovered matters, or is made against any **Insured** and others, the **Insureds** and the Insurer recognize that there must be an allocation between **Loss** and uninsured damages, settlement amounts and other liabilities in connection with such **Claim**." (DE 1-1, General Terms and Conditions, Section VI.A (emphasis in original).) Plaintiff then cites to *Level 3 Communications, Inc. v. Federal Insurance Co.*, 168 F.3d 956 (7th Cir. 1999) and *Miller v. St. Paul Mercury Insurance Co.*, 683

10

F.3d 871 (7th Cir. 2012) for the proposition that if a D & O policy includes an allocation provision, courts should "apply the allocation clause of the D & O policy to provide indemnity for losses on claims by non-insured plaintiffs but not for losses on claims by insured plaintiffs." *Miller*, 683 F.3d at 875. According to Plaintiff, because Tarter Industries is a non-insured plaintiff under the Policy, Defendant, at the very least, has the duty to defend Plaintiff as to the direct claims brought by Tarter Industries. (DE 18 at 11-12.)

Defendant responds that the language of the Policy and the facts of the present case are distinguishable from that of the *Level 3* and *Miller* line of cases, citing *Sphinx International, Inc. v. National Union Fire Insurance Co.*, 412 F.3d 1224 (11th Cir. 2005) and *PowerSports, Inc. v. Royal & Sunalliance Insurance Co.*, 307 F. Supp. 2d 1355 (S.D. Fla. 2004), *aff'd*, 128 F. App'x 95 (11th Cir. 2005). Defendant argues that in other cases where the IvI Exclusion contained an assistance exception like the one here, courts have precluded coverage for the underlying lawsuit as a whole. (DE 14-1 at 17-18; DE 24 at 6.)

*Level 3*, *Miller*, and *PowerSports* concerned D & O policies that contained allocation clauses and IvI Exclusions with no assistance exceptions. In *Sphinx*, the D & O policy at issue included an IvI Exclusion with an assistance exception but no allocation clause. However, in *Jerry's Enterprises, Inc. v. U.S. Specialty Insurance Co.*, 845 F.3d 883 (8th Cir. 2017), a case that neither party cites, the D & O policy had both an IvI Exclusion with an assistance exception and an allocation clause. Like the immediate case, all cases involved underlying actions with both insured and non-insured plaintiffs.

In *Level 3*, a group of minority shareholders brought securities fraud-related claims against a corporation and one of its directors. 168 F.3d at 957. The corporation subsequently filed suit against its D & O policy insurer, seeking to recover defense costs. *Id.* The policy's IvI Exclusion precluded coverage for "any Claim made against an Insured Person" by "any

11

Insured." *Id.* There, the D & O policy similarly defined "Claim" as a "civil proceeding." *Id.* at 960. In the underlying suit, one plaintiff, who joined the action after it was filed, formerly acted as director for the corporation, and that plaintiff—and that plaintiff alone—was considered an "Insured" under the policy's IvI Exclusion. *Id.* at 958. The Seventh Circuit then considered whether the presence of a single "Insured" within the plaintiff group barred coverage for the entire underlying action. *Id.*

While the Seventh Circuit acknowledged that "[t]he presence of an Insured in the litigation could conceivably contaminate the entire litigation, particularly if the insured were a current officer or director of the [subject corporation] *and* the principal plaintiff," the policy's allocation clause solved that problem. *Id.* at 960 (emphasis in original). Because the contract required the allocation of "covered and uncovered losses" when a "Claim" against an "Insured Person" included both "covered and uncovered matters," the presence of a single "Insured" did not preclude coverage for the entire case. *Id.* at 960-61. Instead, the IvI Exclusion only barred coverage for that part of the lawsuit attributed to the sole insured plaintiff. *Id.* at 961. In its rationale, the Court noted that applying the IvI Exclusion wholesale would "produce the odd result that a claim fully covered when made could become fully uncovered when another plaintiff was permitted to join it." *Id.* at 960. Notably, though, the IvI Exclusion in this case did not include an assistance exception.

In *Miller*, the Seventh Circuit again reached a similar conclusion, based on *Level 3*. 683 F.3d 871 at 873. There, the D & O policy had an IvI Exclusion and an allocation clause with substantially terms to those in *Level 3*, and only three out of the five plaintiffs in the underlying action were insured. *Id.* at 872, 877. Applying the rationale from *Level 3*, the Seventh Circuit found that the IvI Exclusion only applied to the individual claims of the insured plaintiffs, concluding that the insurer had a duty to defend the remaining claims. *Id.*

12

at 877. As in *Level 3*, the IvI Exclusion in *Miller* did not contain an assistance exception. *Id.* at 879.

However, in *PowerSports*, a corporation sought coverage under its D & O policy for a lawsuit brought by two former officers/directors and their company. 307 F. Supp. 2d at 1357-58. There, the IvI Exclusion read, "The Insurer shall not be liable for Loss resulting from any Claim made against any Insured person, or . . . the Company. . . brought or maintained by or on behalf of the Company or any Insured Person in any capacity." *Id.* at 1359. The IvI Exclusion did not include an assistance exception. In light of the policy's allocation clause, the corporation argued that the IvI Exclusion did not bar coverage for the entire action but only for those claims brought by the two former officers/directors, who were "Insured Persons" under the policy. *Id.* at 1358, 1361-62.

The Court disagreed. *Id.* at 1361-62. Unlike the action in *Level 3*, the action in *PowerSports* was not covered when it was filed because the "Insured Persons" were plaintiffs in the initial action and parties to all claims in the underlying litigation. *Id.* at 1361. The Court found the policy's allocation clause immaterial, concluding, "Allocation clauses only become relevant in the event that a loss involves both covered and uncovered claims. Whereas this action involves uncovered claims only, the allocation question is moot." *Id.* at 1362. Further, to view the allocation clause as "a grant of coverage" for the remaining claims "read[s] the [IvI] clause out of the policy." *Id.* Therefore, due to the plain language of the exclusion, the entire action was not covered by the Policy. *Id.*

In *Sphinx*, a corporation sought coverage under its D & O policy for a securities class action filed by a former officer/director of the corporation. 226 F. Supp. 2d at 1225-26. In initiating the action, the former officer/director solicited other shareholders to join the action,

13

adding them as plaintiffs as they responded to his solicitation. *Id.* at 1226. The D & O policy contained an IvI Exclusion with an assistance exception barring claims brought

> [b]y or at the behest of . . . any DIRECTOR or OFFICER, or by any security holder of the COMPANY, whether directly or derivatively, *unless such CLAIM is instigated and continued totally independent of, and totally without the solicitation of, or assistance of, or active participation of, or intervention of, any DIRECTOR or OFFICER or the COMPANY or any affiliate of the COMPANY.*

*Id.* (emphasis added). The D & O policy did not have an allocation clause.

Considering the assistance exception, the Eleventh Circuit held that the language of the IvI Exclusion as written precluded coverage for the action in its entirety because of the former officer/director's presence in the lawsuit and his active participation in maintaining it. *Id.* at 1228, 1231. In contrast to the insured plaintiff in *Level 3*, the officer/director in *Sphinx* initiated the lawsuit and solicited the other plaintiffs to join. *Id.* at 1231. Therefore, the action in *Sphinx* was not covered from the outset, whereas in *Level 3*, a single insured plaintiff threatened the action's coverage only upon his joinder mid-suit. *See id.* at 1230-31.

Finally, in *Jerry Enterprises*, a former director, along with two shareholders, sued a corporation in connection with alleged misconduct in lowering share value. 845 F.3d 883 at 885. The corporation then sought recovery from its insurer pursuant to its D & O policy for its defense costs. *Id.* at 885-86. The policy included an IvI Exclusion with an assistance exception, which precluded coverage for any Claim "[b]rought by or on behalf of, or in the name or right of . . . any Insured Person, unless such Claim is . . . brought and maintained independently of, and without the solicitation, assistance or active participation of . . . any Insured Person[.]" *Id.* at 886. The policy defined a Claim as "any civil proceeding commenced by service of a complaint or similar pleading." *Id.* The policy's allocation clause also provided:

> If Loss covered by this Policy and loss not covered by this Policy are both incurred in connection with a single Claim, either because the Claim includes both covered and uncovered matters, or because the Claim is made both against Insureds and against others not included within the definition of

14

> Insured, the Insureds and the Insurer agree to use their best efforts to determine a fair and proper allocation of all such amounts.

*Id.*

The Eighth Circuit found that a straightforward application of the unambiguous IvI Exclusion barred coverage for the entire action, even though the two shareholders were not "Insured Persons." *Id.* at 887-88. The former director constituted an "Insured Person" under the policy, and she was an active participant who brought the lawsuit—a "Claim"—against the corporation. *Id.* The "Insured Person" was a "driving force of the litigation" as the majority shareholder for the shares at issue and as the director who consistently raised concerns about the shares' valuation to the corporation's Board of Directors. *Id.* at 890. Further, the Eighth Circuit noted that the assistance exception in the IvI Exclusion "alleviate[d] the concerns expressed in *Level 3*" that an otherwise covered lawsuit would be "rendered uncovered due to the presence of an Insured Person . . . [whose] personal stake in the suit was de minimis." *Id.*

The Court reached this conclusion, despite the policy's allocation clause. *Id.* at 890-91. The Court explained that applying the allocation clause to this particular lawsuit would "render the assistance exception superfluous, effectively reading that exception out of the contract." *Id.* at 890. Further, pursuant to the governing state contract law, the specific contract language of the IvI Exclusion controlled over the general language of the allocation clause. *Id.* 890-91. Accordingly, the allocation clause did not provide coverage for any part of the lawsuit, and the IvI Exclusion barred coverage for the action in its entirety. *Id.* at 890.

This Court finds the reasoning in *Jerry's Enterprises* most instructive because, like the instant case, the D & O policy implicated there contained *both* a similarly worded IvI Exclusion with an assistance exception *and* an allocation clause. As already discussed, a straightforward application of the Policy's IvI Exclusion here, as written, excludes coverage

15

for the underlying action in its entirety. Similar to the D & O policy in *Jerry's Enterprises*, the Policy in this case includes an IvI Exclusion with an assistance exception that restores coverage under certain circumstances where the Insured Person is not actively involved in pursuing the underlying action. But like the Insured Person in *Jerry's Enterprises*, Anna Lou was a "driving force" in the underlying action. She was a plaintiff in the underlying action from its filing, and she was intimately involved in the process to initiate the underlying action.

The existence of the Policy's allocation clause does not alter the Court's conclusion that coverage is precluded for the entire underlying action. The Court agrees with the Eighth Circuit's analysis in *Jerry Enterprises*—applying the allocation clause in juxtaposition with the assistance exception renders that exception superfluous, and "an insurance contract must be construed without disregarding . . . words or clauses." *Kemper*, 82 S.W.3d at 875. The Court declines to treat the allocation clause as "a grant of coverage" for Tarter Industries' direct claims. *See PowerSports*, 307 F. Supp. 2d at 1362. And, as in *Jerry Enterprises*, Kentucky state contract law dictates that "specific clauses in insurance policies control general clauses." *State Auto. Mut. Ins. Co. v. Ellis*, 700 S.W.2d 801, 803 (Ky. Ct. App. 1985). The IvI Exclusion, which specifically references Claims brought by Insured Persons against another Insured, controls over the allocation clause, which only generally references Claims with "covered and uncovered matters." The allocation clause here only speaks to Claims involving "covered and uncovered matters"—i.e., specific categories of causes of action that may fall outside the purview of the Policy—and Claims "made *against*" an Insured *and others*. The allocation clause does not speak to the inverse scenario in which Insured Persons *and others* are *bringing* Claims against an Insured.

16

This Court's holding is consistent with the holdings in *Level 3* and its progeny, as the D & O policies and the facts surrounding the underlying litigation in those cases are distinguishable from the present case. While the D & O policy in *Level* 3 included both an IvI Exclusion and an allocation clause, the IvI Exclusion did not have an assistance exception like the one in the instant case. In contrast to the insured plaintiff in *Level* 3, Anna Lou, the insured plaintiff, was a key player in initiating the lawsuit, similar to the insured plaintiff in *Sphinx*. Unlike the insured plaintiff in *Level 3* who joined the lawsuit after its filing, Anna Lou was a plaintiff in the underlying action when filed; thus, similar to the actions in *PowerSports* and *Sphinx*, this action was not covered by the Policy from the beginning. Therefore, the combination of the IvI Exclusion's assistance exception with the insured plaintiff's presence in the action from the outset mitigates the Seventh Circuit's concern in *Level 3* that the joinder of an insured person with little stake in a lawsuit would transform a completely covered action into one that was not covered. That concern is particularly allayed here, considering that every other plaintiff besides Tarter Industries exists as either an "Insured Person" or security holder under the IvI Exclusion. In *Level 3*, the Seventh Circuit even contemplated that "[t]he presence of an Insured in the litigation could conceivably contaminate the entire litigation, particularly if the insured were a current officer or director of the [subject corporation] and the principal plaintiff." *Level 3*, 168 F.3d at 960. Such is the case here where Anna Lou is a current officer of Tarter Gate and a primary plaintiff in the underlying action. As the single largest stakeholder in the Tarter Companies, Anna Lou's personal stake in the matter is anything but de minimis. Indeed, the instant case represents the prototypical purpose of IvI Exclusions to preclude D & O coverage for "suits arising out of those particularly bitter disputes that erupt when members of a corporate, as of a personal, family have a falling out and fall to quarreling." *Level 3*, 168 F.3d at 958.

17

The Court finds that, as written, the IvI Exclusion clearly and unambiguously excludes coverage for the entirety of the underlying action, and therefore, Defendant does not have a duty to defend Plaintiff in that case. Because Defendant does not have a duty to defend Plaintiff in the underlying action, Defendant could not have breached that duty by failing to defend or indemnify Plaintiff as a matter of law. Accordingly, Plaintiff fails to state a breach of contract claim, and the Court must dismiss that claim.[5]

### 3. Declaratory Relief Claim

To state a claim for declaratory relief under the Declaratory Judgment Act, the plaintiff must "plausibly allege facts that, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Saginaw Cty. v. STAT Emergency Med. Servs., Inc.*, 946 F.3d 951, 954 (6th Cir. 2020) (citation and quotation marks omitted). In determining if the plaintiff has sufficiently plead "a substantial controversy," a court "looks not to whether the parties once satisfied the requirement, but whether there is an *existing* case or controversy." *City of Parma v. Cingular Wireless, LLC*, 278 F. App'x 636, 641 (6th Cir. 2008) (emphasis in original). "Even when an action presents a live case or controversy at the time of filing, subsequent developments . . . may moot the case." *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 460 (6th Cir. 2007).

Here, Plaintiff seeks a declaration that Defendant is "obligated to defend and indemnify" Plaintiff. (DE 1 ¶ 22.) Plaintiff's claim for declaratory relief hinges on the same question that the Court addressed in examining whether Plaintiff stated a claim for breach

---

[5] Since the Court found that Defendant has no duty to defend Plaintiff in the underlying action based on the Policy's Specific Persons and IvI Exclusions, the Court need not address Defendant's arguments that coverage is also precluded by Tarter Gate's alleged misrepresentation in the application process, the fortuity doctrine, and the failure of certain claims in the underlying action to trigger coverage in the first instance.

18

of contract: Does Defendant have the duty to defend Plaintiff under the terms of the Policy? Because the Court answered "no" to that question, Plaintiff has failed to establish a claim for declaratory relief for the same reasons. Regardless of whether Plaintiff fulfilled the "substantial controversy" requirement when he filed the action, that controversy no longer exists, and the Court's finding that Defendant has no duty to defend Plaintiff in the underlying action renders his claim for declaratory relief moot. Thus, the Court must dismiss Plaintiff's claim for declaratory relief.

### III.  Remaining Motions

Having dismissed the entirety of Plaintiff's complaint for failure to state a claim, the Court denies all other pending motions in this case as moot.

### IV.  Conclusion

The Court hereby ORDERS as follows:

1. Defendant Navigators Insurance Company's motion to dismiss for failure to state a claim (DE 14) is GRANTED;

2. All other pending motions are DENIED (DE 4; DE 25; DE 26) as moot;

3. This action is STRICKEN from the Court's active docket; and

4. The Court will ENTER an appropriate judgment.

Dated January 15, 2021

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY